```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10-4-11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
U.S. BANK, N.A., as Trustee for the Registered
Holders of ML-CFC Commercial Mortgage Trust
2006-1, Commercial Mortgage Pass-Through
Certificates, Series 2006-1
      Plaintiff,

v.

SQUADRON VCD, LLC, ALLEN MORTON,
PATSY MORTON, and John Does 1-100, the
latter names being fictitious but intending to
designate tenants and persons in possession or
persons have an interest in the premises described
in the Complaint herein,
      Defendants.
----------------------------------------------------------------x

## **MEMORANDUM DECISION**

10 CV 5484 (VB)

Briccetti, J.:

    Plaintiff U.S. Bank, N.A., brings this action seeking to foreclose on a mortgage secured by a property located at 20 Squadron Boulevard in New City, New York.

    Pending before the Court is plaintiff's motion for summary judgment (Doc. #25) which, for the following reasons, is GRANTED.

    The Court possesses subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332.

## **BACKGROUND**

    The parties have submitted briefs, affidavits, and supporting exhibits, which reflect the following factual background.

    Plaintiff is a national banking association with a principal place of business in Minneapolis, Minnesota. Defendant Squadron VCD, LLC, ("Squadron") is a New York limited liability company. Defendants Allen Morton and Patsy Morton are members of Squadron and reside in Mt. Kisco, New York.

1

On September 13, 2005, Windsor Realty Associates, LLC, ("Windsor") executed a promissory note, promising to pay Merrill Lynch Mortgage Lending, Inc., ("Merrill Lynch") a principal amount of $11,000,000.00. On the same date, Windsor executed and delivered to Merrill Lynch a loan agreement, under which Merrill Lynch agreed to loan Windsor $11,000,000.00. As security for the note, Windsor executed and delivered to Merrill Lynch a mortgage on the property located at 20 Squadron Boulevard in New City, New York. The mortgage was recorded on September 26, 2005, by the Office of the Rockland County Clerk. As further security for the note, Henry N. Lieberman executed and delivered to Merrill Lynch a guaranty agreement unconditionally guaranteeing payment and performance of the obligations set forth in the note, mortgage, and loan agreement. (Gavin Aff. ¶¶ 5,6, Exhs. E, F.)

On March 22, 2006, Merrill Lynch entered into an agreement to transfer a pool of mortgage loans into a trust fund. (Gavin Reply Aff. ¶ 5.) This agreement describes a Pooling and Servicing Agreement ("PSA") under which the trust was created and is governed. (Id.) The PSA is dated March 2, 2006, and is between Merrill Lynch, Wachovia Bank, National Association, as master servicer, Midland Loan Service, Inc., as special servicer ("Midland"), and LaSalle Bank National Association ("LaSalle"). On March 30, 2006, Merrill Lynch assigned the note, mortgage, and related loan documents to LaSalle, as Trustee for the Registered Holder of ML-CFC Commercial Mortgage Trust 2006-1 (the "Trust"), Commercial Mortgage Pass-Through Certificates, Series 2006-1. (Gavin Aff. Exh. G; Gavin Reply Aff. Exh. U § 2.01(a); Exh. U at 45-48, 82.) In the PSA and related assignment agreements Merrill Lynch represents and warrants that as of March 30, 2006, it delivered to LaSalle the mortgage, note, and related loan documents. (Gavin Reply Aff. Exh. T § 2(c); Exh. U § 2.01(a); Exh. U at 45-48, 82.) On July 16, 2007, Windsor, Lieberman, LaSalle, and defendants entered into an agreement through

2

which the defendants assumed Windsor's and Lieberman's obligations under the note, mortgage, and loan agreement. In this assumption agreement, defendants represent and warrant that the note, mortgage, and loan agreement are valid and binding obligations, enforceable in accordance with their respective terms. (Gavin Aff. Exh. H ¶ 14.)

LaSalle was the initial trustee of the Trust until June 30, 2008. On that date, Wells Fargo Bank, N.A. ("Wells Fargo") became the successor trustee. (Gavin Reply Aff. ¶ 14; Feldman Aff. ¶ 3.) The resignation of LaSalle and appointment of Wells Fargo as trustee is evidenced by an agreement among Merrill Lynch, LaSalle, and Wells Fargo, dated June 30, 2008. (Gavin Reply Aff. Exh. V.) This appointment agreement fully vested Wells Fargo with the rights, powers, duties, and obligations of the trustee under the PSA. (Id.) In the Wells Fargo appointment agreement LaSalle represented and warranted that, as of June 30, 2008, it had delivered to Wells Fargo all necessary documents, including all "Mortgage Files," which is defined by reference to the PSA. (Gavin Reply Aff. Exh. V § 4(a).) Under the PSA, the "Mortgage File" includes, inter alia, the original executed mortgage note (defined as the original executed note evidencing the indebtedness of a mortgagor under a mortgage loan); an original or copy of the mortgage; an original or copy of any related assignment of leases; an original executed assignment; an original assignment of all unrecorded documents relating to the mortgage loans in the trust; originals or copies of any consolidation, assumption, substitution, and modification agreements; an original copy of any ground lease, guaranty, or ground lessor estoppels; and an original or copy of any loan agreement. (Gavin Reply Aff. Exh. U at 45-48.)

Prior to Wells Fargo's becoming successor trustee, LaSalle and Wells Fargo knew that Wells Fargo would need to resign as trustee within a few months. (Feldman Aff. ¶ 6.) Wells Fargo was the trustee for a 6-month period, from June 30, 2008, to December 31, 2008.

3

(Feldman Aff. ¶ 4.) Wells Fargo, LaSalle, and plaintiff agreed to assign the note, mortgage, and loan agreement directly to plaintiff from LaSalle, in an attempt to eliminate paperwork and make sure notices from the local taxing authorities would not be delayed by being sent to Wells Fargo and would be sent directly to plaintiff. (Id. ¶¶ 7-9.) By agreement executed on October 14, 2008, LaSalle assigned the note, mortgage, and related loan documents to plaintiff (the "LaSalle Assignment"). The LaSalle Assignment stated that the agreement was to be effective as of June 30, 2008. (Gavin Aff. Exh. I.) Upon the termination of Wells Fargo as trustee, on January 1, 2009, plaintiff became the successor trustee. (Feldman Aff. ¶ 5.) In the appointment agreement between Wells Fargo and plaintiff, Wells Fargo represented and warranted that it delivered to plaintiff the mortgage, note, and related loan documents. (Gavin Reply Aff. Exh. W § 3(a); Exh. U § 2.01(a); Exh. U at 45-48.)

Pursuant to the note, Squadron is required to make monthly payments on the principal and interest on the unpaid principal. (Gavin Aff. Exh. C at 1.) According to the note and loan agreement, it is an event of default if any payment due is not made prior to the fifth day following the date it was due. (Gavin Aff. Exh. C at 1; Exh. F § 10.1(a).) Under the loan agreement, upon default, the interest rate on all amounts due increases to the interest rate[1] plus 4% per annum, the lender is entitled to a late charge of 5% of the delinquent payment, and Squadron is required to pay certain additional amounts in the event of prepayment.[2] (Gavin Aff. Exh. F §§ 2.4, 2.5(a), 2.6.) Upon default, under the note and mortgage, the lender has the right to

---

[1] Under the loan agreement, interest accrues on the unpaid principal balance at 5.172% per annum. (Gavin Aff. Exh. F § 2.2(a).)

[2] Under the loan agreement, Squadron has no right to make any prepayments, in whole or in part, on the amount due under the note between the date of the loan agreement, September 13, 2005, and July 1, 2015. If Squadron defaults under the note and loan agreement, and Squadron tenders payment of all or any part of the outstanding amount due, that payment is deemed an involuntary prepayment under the loan agreement and Squadron is required to pay an amount in addition to the outstanding principal and interest. (Gavin Aff. Exh. F § 2.6.)

4

accelerate and demand, without notice, the entire balance due under the note, and is permitted to recover from Squadron its attorneys' fees and costs in any action for foreclosure or otherwise to collect the mortgaged debt. (Gavin Aff. Exh. C at 1; Exh. D §§ 8.1(a), 8.3.)

Squadron defaulted on the note and mortgage by failing to make the payment of principal and interest due on February 1, 2009. By letter dated February 17, 2009, Squadron was notified of the default. (Gavin Aff. Exh. J.) The February 17 letter was sent to Squadron by Midland on behalf of LaSalle, as the "current noteholder." (Id.) Midland is the special servicer for plaintiff U.S. Bank, as trustee for the Trust, according to the September 21, 2010, affidavit of Jason Gavin, an asset manager for Midland. (Gavin Aff. ¶ 1.) In the February 17 letter, Midland notified Squadron that it could cure its default by remitting funds in the amount of $94,248.23 within ten days. (Gavin Aff. Exh. F.) By letter dated October 8, 2009, Squadron was again advised of its default, and requested to provide a written proposal for resolving the defaults and paying the outstanding balance due within seven days. (Gavin Aff. Exh. K.) The October 8 letter was sent on behalf of Bank of America, N.A., as successor to LaSalle. (Id.) Defendants admit receipt of both letters. (Morton Aff. ¶¶ 21-22.) Defendants assert that after they received the letter of February 17, 2009, they paid the total amount due each month through September 2009. (Morton Aff. ¶ 26.)

By the complaint, dated July 15, 2010, plaintiff declared the amount owed under the note and related loan documents immediately due and payable. As of October 1, 2010, the total amount due and owing to plaintiff was $12,842,637.86.

## DISCUSSION

A motion for summary judgment must be granted if the pleadings, discovery materials before the court, and any affidavits show that there is no genuine issue as to any material fact and

it is clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Grp., Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson v. Liberty Lobby, 477 U.S. at 24. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. See Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. See Patterson v. Cnty. of Oneida, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

## I. <u>Prima Facie Case for Foreclosure</u>

The choice of law provisions in the parties' agreements indicate the agreements are governed by New York law. Moreover, the parties all rely on New York law in their moving papers. Therefore, New York law governs this dispute.

Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the note and mortgage are produced to the Court along with proof that the mortgagor has failed to make payments due under the note. <u>Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs.</u>, 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001); <u>FGH Realty Credit Corp. v. VRD Realty Corp.</u>, 647 N.Y.S.2d 229, 230 (2d Dep't 1996). Once plaintiff has established its prima facie case by presenting the note, mortgage, and proof of default, the mortgagee has a presumptive right to foreclose, which can only be overcome by an affirmative showing by the mortgagor. <u>Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs.</u> 139 F. Supp. 2d at 465-66.

Here, plaintiff has provided the Court with the note, mortgage, and loan documents. Defendants do not dispute that they assumed the obligations arising under those documents. It is also undisputed that defendants defaulted on the note and mortgage by failing to make the payment of the principal and interest due on February 1, 2009.[3]

Defendants argue that plaintiff lacks standing to bring this foreclosure action for two reasons. First, defendants argue that the LaSalle Assignment to plaintiff is invalid because (1) at the time LaSalle executed the assignment agreement, LaSalle lacked the requisite authority to

---

[3] Defendants claim that they paid the total amount due each month after February 2009 through September 2009. This does not affect the defendants' failure to pay the amount due on February 1, 2009. <u>See</u> <u>Bankers Trust Co. v. Hoovis</u>, 694 N.Y.S.2d 245, 247 (3d Dep't 1999) ("It is well settled that a mortgagee is not required to accept an insufficient tender of payment of arrears and after issuing notification to the mortgagor of acceleration of the entire debt, a mortgagee has the right to reject payment of partial or full arrears, even where a foreclosure action has not been commenced." (citations omitted)).

7

assign the mortgage, and (2) the assignment agreement is facially invalid for a number of reasons, including the questionable signatures of Karyn Cassano (a vice president of LaSalle at the time of the assignment); the back dating of the LaSalle Assignment's effective date; the failure to record the LaSalle assignment for almost one year; the notary's stricken expiration date on the LaSalle Assignment; and the involvement of Anderson, McCoy, and Orta, the law firm who filed the LaSalle Assignment. Second, defendants argue that the assignment of the promissory note to plaintiff was invalid because the note was not assigned to plaintiff along with the underlying mortgage.

### A. The LaSalle Assignment

Defendants' major contention is that the LaSalle Assignment is invalid because LaSalle had resigned as trustee for the Trust prior to the date the LaSalle Assignment was executed. According to defendants, the existence of Wells Fargo in the "trustee chain," without its existence in the "mortgage assignment" chain, is a sufficient factual issue to require denial of summary judgment.

Specifically, defendants look to Section 8.07(d) of the PSA, which states that upon termination of the trustee, "all of [the trustee's] rights and obligations under [the PSA] and in and to the Mortgage Loans shall be terminated." The term "Mortgage Loan" expressly includes the original executed mortgage note (defined as the original executed note evidencing the indebtedness of a mortgagor under a mortgage loan), an original or copy of the mortgage, and an original or copy of any loan agreement. (Gavin Reply Aff. Exh. U at 45-48.) LaSalle resigned as trustee on June 30, 2008. On that date, Wells Fargo became the successor trustee. The LaSalle Assignment was executed on October 14, 2008, but includes an effective date of June 30, 2008. Defendants claim, therefore, that at the time of the LaSalle Assignment, LaSalle had

8

no authority to act on behalf of the Trust, and thus no authority to assign the mortgage to plaintiff.

### 1. Assignment by Delivery

The presence of Wells Fargo in the "trustee chain" does not present a factual issue warranting denial of summary judgment. Furthermore, Wells Fargo's appointment as interim trustee also does not indicate that plaintiff lacks standing as a legal matter. A mortgage may be assigned by the delivery of the bond and mortgage by the assignor to the assignee with the intention that all ownership interests are thereby transferred. Deutsche Bank Nat'l Trust Co. v. McRae, 894 N.Y.S.2d 720, 722 (Sup. Ct. 2010); Fremont Inv. & Loan v. Laroc, 2008 WL 4764809, at *3 (N.Y. Sup. Ct. 2008).

Here, plaintiff has set forth a chain of delivery of the mortgage, note, and related loan documents, from Merrill Lynch to the Trust and to LaSalle as the trustee, from LaSalle to Wells Fargo, and from Wells Fargo to plaintiff. Defendants do not contest this. Because plaintiff has demonstrated its valid ownership of the mortgage, note, and loan documents, it has standing to bring this foreclosure action. See Bankers Trust Co. v. Hoovis, 694 N.Y.S.2d at 247 (rejecting "defendant's contention that plaintiff lacked standing based on the allegation that plaintiff did not obtain the assignment of mortgage until after the commencement of the action" where defendant did not contradict plaintiff's documentation that the note and mortgage were delivered to the plaintiff prior to the initiation of the action).

## 2. **Effective Date**

Regarding the "mortgage assignment" chain, defendants take issue with the "back dating" of the LaSalle Assignment. However, "[i]t is fundamental that where parties to an agreement expressly provide that a written contract be entered into 'as of' an earlier date than that on which it was executed, the agreement is effective retroactively 'as of' the earlier date and the parties are bound thereby accordingly." Colello v. Colello, 780 N.Y.S.2d 450, 453 (4th Dep't 2004); see also Local Union 1567, Int'l Bhd. of Elec. Workers, AFL-CIO v. Orange & Rockland Utils., Inc., 478 N.Y.S.2d 937, 938 (2d Dep't 1984) (holding a collective bargaining agreement that had language making it retroactive to the expiration date of an original agreement was valid, and an employer had a duty to arbitrate, under the subsequent agreement, an issue that arose during interim period between agreements); Viacom Int'l Inc. v. Tandem Prods., Inc., 368 F. Supp. 1264, 1270 (S.D.N.Y. 1974) ("When a written contract provides that it shall be effective 'as of' an earlier date, it generally is retroactive to the earlier date.").

Here, defendants point out that the LaSalle Assignment was executed October 14, 2008, but includes an effective date of June 30, 2008. They present no legal authority to support any impropriety with this agreed-upon earlier effective date.[4] Therefore, plaintiff has set forth valid written assignments from Merrill Lynch to LaSalle and from LaSalle to plaintiff sufficient to transfer ownership of the mortgage to, and confer standing upon, plaintiff.

---

[4] The Court notes Countrywide Home Loans, Inc. v. Taylor, 843 N.Y.S.2d 495, 497 (Sup. Ct. 2007), held that language in an assignment agreement stating that the "(a)ssignment shall be deemed effective as of" a date prior to date the complaint was filed was insufficient to establish plaintiff's ownership interest at the time the action was commenced. However, in the instant case, the LaSalle Assignment was signed October 14, 2008, and the complaint was not filed until July 20, 2010. Thus, unlike Taylor, plaintiff here is not attempting retroactively to establish proper assignment of a mortgage subsequent to filing the complaint.

### 3. Trustee Succession

Essential to defendants' argument that LaSalle lacked authority to assign the mortgage and related obligations is a provision of the PSA dealing with the rights and powers of a terminated trustee. However, in New York, the rights and powers of a <u>successor</u> trustee are conferred as a matter of law. Under the New York Estates, Powers and Trusts Law, "[i]n the absence of contrary or limiting provisions in the . . . will, deed or other instrument," every successor or substitute fiduciary is authorized "to succeed to all of the powers, duties and discretion of the original fiduciary, with respect to the estate or trust, as were given to the original fiduciary . . . ." See N.Y. Est. Powers & Trusts § 11-1.1(b)(12).

Defendants have not pointed to any provision of the PSA which limits the powers of successor fiduciaries. To the contrary, Section 8.08 of the PSA governs "Successor Trustees" and states that the successor trustee need only execute, acknowledge, and deliver an instrument accepting appointment as successor trustee and "without any further act" shall become fully vested with all the rights, powers, duties, and obligations of its predecessor. (Gavin Reply Aff. Exh. W § 8.08(a).) The Wells Fargo appointment agreement fully vested Wells Fargo with the rights, powers, duties, and obligations of the trustee under the PSA. The appointment agreement between Wells Fargo and plaintiff vested plaintiff with the same. The Trust contains the mortgage, note, and related loan documents. Thus, by operation of law and by the relevant contracts, plaintiff has standing to bring this action as successor trustee of the Trust.

### 4. Record Date

Defendants claim the failure to record the LaSalle Assignment for almost one year is evidence that a reasonable jury could conclude renders that assignment invalid. However, the failure to record is a legal issue, and under New York law an assignment of a mortgage is

11

effective even if it is not recorded. See, e.g., HSBC Bank USA Nat'l Ass'n v. Delacadena, 2009 WL 3384432, at *2 (N.Y. Sup. Ct. 2009) (noting that "mere delivery of the instruments of indebtedness is sufficient to confer standing and the recording of a written assignment of mortgage merely serves to put the world on record notice of the transfer of rights").

Defendants raise several other alleged factual issues, including the questionable signatures of Karyn Cassano (a vice president of LaSalle at the time of the assignment), the notary's stricken expiration date on the LaSalle Assignment, and the involvement of Anderson, McCoy, and Orta, the law firm who filed the LaSalle Assignment. Defendants have failed, however, to provide the Court with evidence to support these claims that is more than conclusory or speculative. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. Thus, defendants have failed to raise a genuine issue of material fact regarding the validity of the LaSalle Assignment.[5]

### B. Promissory Note

Finally, defendants argue that the note was not properly assigned in the LaSalle Assignment because there was no written assignment or physical delivery thereof. On the contrary, plaintiff asserts that the note was part of both the LaSalle Assignment and the original assignment from Merrill Lynch to LaSalle.

"In a mortgage foreclosure action, a plaintiff has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced." U.S. Bank, N.A. v. Collymore, 90 N.Y.S.2d 578, 580 (2d Dep't 2009). Defendants argue the note is a negotiable instrument under the New York Uniform Commercial

---

[5] Defendants claim that the moving affidavit of Jason Gavin is somehow suspect. However, the power of attorney establishing Midland as the special servicer of the Trust references the PSA, and Sections 3.01 and 3.09 of the PSA provide Midland with the authority to exercise reasonable efforts to foreclose on the mortgage. (Gavin Aff. Exh. B; Gavin Reply Aff. Exh. U §§ 3.01, 3.09.) In their sur-reply, the defendants do not raise this concern again. The Court therefore perceives no issue with the affidavits of Jason Gavin.

Code and, as such, it requires an endorsement on the note itself "or on a paper so firmly affixed thereto as to become a part thereof" in order to effectuate a valid assignment of the entire note. See N.Y.U.C.C. § 3-202. However, "(e)ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." U.S. Bank, N.A. v. Collymore, 90 N.Y.S.2d at 580. Written assignment of the underlying note can be accomplished by a written reference to the note within the mortgage assignment. See In re Stralem, 758 N.Y.S.2d 345, 347-48 (2d Dep't 2003) (holding a note was properly assigned when the mortgage was assigned "together with the note or obligation described in or secured by said mortgage"); cf. HSBC Bank USA, Nat'l Ass'n v. Miller, 889 N.Y.S.2d 430, 433 (Sup. Ct. 2009) (holding the assignment of a note invalid where the language of the assignment did not explicitly assign "the note or obligation described and secured by said mortgage").

Here, both assignments explicitly reference the underlying promissory note. The assignment from Merrill Lynch to LaSalle included "the bonds or notes or obligations described in said mortgage." The LaSalle Assignment included "the subject note(s) and loan documents." Therefore, the note was validly assigned to plaintiff.[6]

---

[6] To the extent defendants argue the transfer of the mortgage, note, and loan documents from Merrill Lynch to the Trust was invalid, that argument fails for two reasons. First, the PSA sets forth the transfer and delivery of the mortgage, note, and loan documents to the Trust and LaSalle as trustee. The definition of "Trust Mortgage Loan" in Section 2.01 of the PSA includes each of the "Mortgage Loans" transferred to the Trust and listed on the "Mortgage Loan Schedule," which includes the mortgaged property at issue in this case. The term "Mortgage Loan" expressly includes the original executed mortgage note (defined as the original executed note evidencing the indebtedness of a mortgagor under a mortgage loan), an original or copy of the mortgage, and an original or copy of any loan agreement. Thus, written assignment and delivery of the mortgage and underlying note were valid between Merrill Lynch and LaSalle. Second, defendants appear to have waived any defenses to this assignment when they signed the assumption agreement. (Gavin Aff. Exh. H ¶ 3.) See, e.g., In re Integrated Res., Inc., 1995 WL

## II. Affirmative Defenses

Defendants raise several affirmative defenses in their answer to the complaint. Most of the affirmative defenses are addressed substantively in this decision. The rest of the affirmative defenses do not bar the entry of summary judgment as to a prima facie case of foreclosure, but the Court will nevertheless address them.

The third affirmative defense is based on the statute of frauds. Here, the assignments and related agreements are in writing. Furthermore, a statute of frauds defense cannot be raised by a third party to the contract at issue. See Countrywide Home Loans, Inc. v. Brown, 223 Fed. App'x 13, 14 (2d Cir. 2007).

Defendants' fourth affirmative defense claims this action is barred by the New York Real Property Law, without more. As set forth above, however, Plaintiff has satisfied the elements of a prima facie case for foreclosure under New York law.

The fifth affirmative defense states that no damages have been suffered by plaintiff, but plaintiff has set forth undisputed evidence to the contrary.

The sixth affirmative defense is based on the notice of default received by defendants. However, the mortgage provides that no notice is required upon default, and thus any inadequacy of the notice given in this case does not warrant denial of summary judgment. See Long Island Sav. Bank of Centereach, F.S.B. v. Denkensohn, 635 N.Y.S.2d 683, 684 (2d Dep't 1995).

## III. Attorneys' Fees

Plaintiff is entitled to attorneys' fees under the terms of the mortgage. Fed. Home Loan Mortg. Corp. v. Perez, 1992 WL 350595, at *2 (E.D.N.Y. Nov. 23, 1992) ("A plaintiff may also recover its attorneys fees incurred in a foreclosure action if the parties' agreement has provided

---

234975, at *6 (S.D.N.Y. Apr. 21, 1995); Chemical Bank v. Allen, 640 N.Y.S.2d 77, 77 (1st Dep't 1996).

for them."); Kenneth Pregno Agency, Ltd. v. Letterese, 492 N.Y.S.2d 824, 825–26 (2d Dep't 1985). These fees are in addition to the total amount due and owing to plaintiff under the mortgage, note, and loan documents. Plaintiff has provided the court with an affidavit and calculations in support of attorneys' fees as of October 1, 2010. Upon foreclosure and sale of the property at issue in this action, plaintiff shall provide an updated affidavit in support of attorneys' fees.

## CONCLUSION

Plaintiff has satisfied the requirements for a prima facie case of foreclosure, and there is no genuine dispute as to any material fact. Plaintiff's motion for summary judgment (Doc. #25) is therefore GRANTED.

Plaintiff may foreclose on the property located at 20 Squadron Boulevard in New City, New York. If there is no deficiency, then this case will be closed. The Court will retain jurisdiction over this matter in the event there is a deficiency after the sale of the property. Plaintiff is directed to submit an order of foreclosure for the Court's approval by no later than October 14, 2011.

The Clerk is instructed to terminate the motion (Doc. #25).

Dated: October 3, 2011
       White Plains, New York

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge